*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DOLORES TAPIA-MARTINEZ,

                *Petitioner,*

    *v.*

ALBERTO R. GONZALES, Attorney General of United States,

                *Respondent.*

No. 05-4413

>

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A76 516 486.

Argued: February 13, 2007

Decided and Filed: February 27, 2007[*]

Before: SUHRHEINRICH, SUTTON, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Marisa C. Petrella, PETRELLA BROWN PLC, Southfield, Michigan, for Petitioner. Daniel E. Goldman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Marisa C. Petrella, PETRELLA BROWN PLC, Southfield, Michigan, for Petitioner. Daniel E. Goldman, M. Jocelyn Wright, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

    SUHRHEINRICH, Circuit Judge. Petitioner, Dolores Tapia-Martinez, seeks judicial review of a decision of the Board of Immigration Appeals ("BIA"), denying her second motion to reopen as numerically barred under 8 C.F.R. § 1–3.2(c)(2). Petitioner asserts that because her second motion to reopen is based on ineffective assistance of counsel, equitable tolling should apply. Petitioner also argues that review by a three-member panel pursuant to 8 C.F.R. § 1003.1(e)(6)(v) is warranted. We **AFFIRM.**

---

[*] This decision was originally issued as an "unpublished decision" filed on February 27, 2007. On March 30, 2007, the court designated the opinion as one recommended for full-text publication.

## I. Background

The facts were laid out in a prior appeal:

Petitioner is a native and citizen of Mexico. Pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), the INS commenced removal proceedings against petitioner by filing a Notice to Appear in November 1999, alleging that petitioner was an alien living in the United States without being admitted or paroled. Petitioner appeared before an IJ on May 24, 2000, where she was informed that relief in the form of cancellation of removal might be available to her. At a hearing held before the IJ on August 9, 2000, petitioner, through her counsel, admitted the allegations in the Notice to Appear and conceded removability. Petitioner's lawyer also requested cancellation of removal for petitioner under 8 U.S.C. § 1229b. The IJ directed that petitioner's application for cancellation of removal "must be filed no later than September 25, 2000." The IJ also scheduled a merits hearing for May 7, 2001, for adjudication of petitioner's application for cancellation of removal.

The record indicates that petitioner never filed an application for cancellation of removal. On March 29, 2001, the INS filed a motion to pretermit petitioner's application for cancellation of removal. On April 19, 2001, petitioner moved to allow substitution of new counsel Marisa Petrella for old counsel Valerie Yaeger and also moved to postpone the May 7 hearing. On April 23, 2001, petitioner filed an emergency motion requesting leave to file a late application for cancellation of removal, alleging that Yaeger had provided ineffective assistance of counsel by not submitting a timely application.

At the hearing on May 7, 2001, the IJ granted the INS's motion to pretermit, granted petitioner's motion to substitute counsel, and denied petitioner's motion for leave to file a late application. With regard to the latter motion, the IJ noted that petitioner's former counsel had been suspended from the practice of law, but the IJ pointed out that petitioner's new counsel had failed to include any evidence or affidavits to support petitioner's motion for leave to file a late application. The IJ indicated that petitioner's counsel could file a motion to reopen petitioner's case, supported by proper evidence, based specifically on an argument that petitioner's previous counsel had been ineffective.

Petitioner then requested voluntary departure from the United States under 8 U.S.C. § 1229c, and she testified that she had the means to leave the United States and would do so if her request were granted. The IJ granted her voluntary departure, requiring her to leave on or before July 6, 2001. The IJ also notified petitioner that if she chose to appeal the IJ's decision, her appeal "must be filed . . . on or before June 6, 2001. If you do not file the appeal, it may be dismissed as untimely."

Petitioner chose to appeal the IJ's decision to the BIA but did not file a motion to reopen her case. On June 5, 2001, petitioner's counsel mailed the notice of appeal to the BIA via U.S. Postal Service Express Mail but failed to ensure it was sent via next-day delivery. Petitioner's appeal was not received by the BIA until June 7, 2001. For this reason, the BIA dismissed the appeal as untimely on August 8, 2002. *See* 8 C.F.R. §§ 1003.38(b)-(c).

Petitioner's counsel then moved the IJ to reopen and, in the alternative, to reconsider, petitioner's case. The motion was dated August 30, 2002, but it was not filed with the Immigration Court until September 3, 2002. Petitioner's counsel failed

to pay the filing fees for the motions.  The IJ denied the motions on September 10, 2002, noting that:

> .        the petitioner failed to include a fee receipt as required by 8 C.F.R. § 1003.23(b)(1)(ii);
> .        the motion to reconsider was filed more than thirty days after the entry of the May 7, 2001, order, which was the order petitioner wanted the court to reconsider;
> .        the petitioner was no longer eligible for cancellation of removal, since she had remained in the United States beyond the date set for her voluntary departure, *see* 8 U.S.C. § 1229c(d);
>
> and
>
> .        petitioner did not support her motion to reopen with a copy of the application for the relief requested, *see* 8 C.F.R. § 1003.23(b)(3).

On October 10, 2002, petitioner timely appealed the IJ's decision to the BIA.  On November 28, 2003, the BIA affirmed the IJ's decision without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4), thereby rendering the IJ's September 10, 2002, decision the final agency determination for purposes of judicial review.  Petitioner then petitioned this court for review of the IJ's September 10, 2002, decision.

*Tapia-Martinez v. Gonzales*, 142 F. App'x 882, 883-84 (6th Cir. 2005).

This Court denied the petition for review on July 28, 2005, *see id.* at  886, holding that the BIA did not abuse its discretion in denying Petitioner's motion to reopen, or to reconsider, for the numerous reasons set out by the Immigration Judge ("IJ").  *Id.* at 884.  First, we noted that she failed to include the fee receipt as required by 8 C.F.R. §§ 1003.23(b)(1)(ii) & 1003.31(b).  *Id.* Second, although the IJ cited the wrong regulation, the IJ correctly held that petitioner's motion to reconsider was untimely.   The motion was due within thirty days of the IJ's order becoming final. § 1003.23(b)(1).  *Id.* at 884-85.  Because Petitioner's counsel failed to file a timely appeal, the IJ's order became final on June 6, 2001, *see id.* § 1003.39, giving petitioner thirty days from that date to file a motion to reconsider.  *Id.* at 885.  Third, we held that Petitioner failed to support her motion to reopen with a copy of the application for relief requested, as required by § 1003.23(b)(3).  *Id.*

Lastly, we noted that Petitioner sought to reopen her case because of the ineffective assistance of her prior counsel.  *Id.*  We stated that

> regardless of the merits of her ineffective assistance claim, petitioner did not comply with the voluntary departure order of May 7, 2001.  Under 8 U.S.C. § 1229c(d), an alien who is permitted to depart voluntarily but fails to do so within the specified time period is ineligible for certain relief, including cancellation of removal, for ten years.  Petitioner was specifically advised of these potential consequences at the May 7, 2001, hearing.  Because she did not abide by the terms of the voluntary departure, she became ineligible for cancellation of removal, and thus even if the IJ had been inclined to allow the petitioner to file an application for cancellation of removal, the application would have been denied.

*Id.*

On or about July 13, 2005, while awaiting a decision regarding judicial review of the BIA's decision, Petitioner asked the Department of Homeland Security to join in a second motion to reopen,[1] this time following the IJ's advice and premising the motion on ineffective assistance of counsel. The request to join the second motion to reopen was denied.[2] On August 19, 2005, Petitioner then independently filed a second motion to reopen. The BIA denied the second motion to reopen by order dated October 6, 2005, deciding that it exceeded the numerical limitations for motions to reopen, under 8 C.F.R. § 1003.2(c)(2).

On May 11, 2006, a panel of this Court granted Petitioner's motion for stay of removal pending judicial review of the BIA's decision denying her second motion to reopen. The BIA's denial of Petitioner's second motion to reopen is now before us.

## II. Analysis

### A. Motion to Reopen

The denial of a motion to reopen is reviewed for abuse of discretion. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). An abuse of discretion occurs when the denial to reopen "was made without a rational explanation, inexplicably departed from established policies, or rested on an invidious discrimination against a particular group." *Id.* (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)). Issues of law are reviewed *de novo* by this Court. *Id.*

The Board did not abuse its discretion in denying Petitioner's second motion to reopen as numerically barred. Section 240 of the Immigration and Nationality Act (INA), which governs removal proceedings, provides that an alien who is ordered removed may file only one motion to reopen. 8 U.S.C. § 1229a(c)(7)(A) (2006). Furthermore, 8 C.F.R. § 1003.2(c)(2) provides that "[e]xcept as provided in paragraph (c)(3) of this section, an alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2) (2007). Section 1003.2(c)(3) provides four exceptions to the time and numeric bar for motions to reopen; none are applicable here. *See* 8 C.F.R. § 1003.2(c)(3).[3]

---

[1] Joint motions to reopen are not subject to the numerical limitations that are normally applicable pursuant to 8 C.F.R. § 1003.2(c)(2) and (3).

[2] In a letter dated July 26, 2005, Kathleen L. Alcorn, Chief Counsel, U.S. Department of Homeland Security in Detroit, stated in pertinent part:

> The respondent entered the United States without inspection. She has been under a final order since May 7, 2001. The respondent has failed to depart the United States and is statutorily barred from relief. Moreover, her children were granted final orders of voluntary departure on December 7, 2000. She has not established hardship given her husband's status as a lawful permanent resident. Finally, you request a joint motion to reopen but state your client has filed a grievance against you for your representation. Based on all these facts the Service is not inclined to join in a motion to reopen.

[3] 8 C.F.R. § 1003.2(3)(c) provides as follows:

(3) In removal proceedings pursuant to section 240 of the Act, the time limitation set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen filed pursuant to the provisions of § 1003.23(b)(4)(ii). The time and numerical limitations set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen proceedings:
(i) Filed pursuant to the provisions of § 1003.23(b)(4)(iii)(A)(1) or § 1003.23(b)(4)(iii)(A)(2);
(ii) To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing;

Petitioner filed her first motion to reopen on September 3, 2002,[4] and her second motion to reopen on the basis of ineffective assistance of counsel in 2005. The second is clearly subject to the numerical bar of 8 C.F.R. § 1003.2(c)(2). Because the BIA based its decision on this ground, the BIA was not obliged to address the substantive argument–ineffective assistance of counsel–in denying the motion to reopen. *See Daniels v. United States*, 532 U.S. 374, 381 (2001) ("Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim.").

Petitioner nonetheless claims that, under the theory of equitable tolling, she should be permitted to file a second motion to reopen. "Strictly defined, equitable tolling is '[t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired.'" *Luntungan v. Attorney Gen.*, 449 F.3d 551, 557 (3d Cir. 2006) (per curiam) (quoting *Black's Law Dictionary* 579 (8th ed. 2004)).[5]

The Second, Fourth, and Ninth Circuits have expressly applied equitable tolling to cases involving the numeric bar on motions to reopen. *See Zhao v. INS*, 452 F.3d 154, 156-57 (2d Cir. 2006); *Iturribarria v. INS*, 321 F.3d 889, 897-98 (9th Cir. 2003); *Davies v. INS*, 10 F. App'x 223, 224 (4th Cir. 2001) (per curiam). Assuming *arguendo* that equitable tolling applied to the one motion limit, the First, Third, and Eighth Circuits have held that the doctrine was inapplicable for other reasons, such as lack of due diligence. *See Habchy v. Gonzales*, 471 F.3d 858, 864-65 (8th Cir. 2006); *Chen v. Gonzales*, 415 F.3d 151, 154, 154 n.3 (1st Cir. 2005); *Luntungan*, 449 F.3d at 557; *Jobe v. INS*, 238 F.3d 96, 100 (1st Cir. 2001) (en banc).

The Sixth Circuit has applied the doctrine of equitable tolling to otherwise *time*-barred motions to reopen.[6] *See Harchenko v. INS*, 379 F.3d 405, 409-10 (6th Cir. 2004) ("This court has previously noted that the time for filing a motion to reopen can be equitably tolled . . . ."); *Ljucovic v. Gonzales*, 144 F. App'x 500, 503 (6th Cir. 2005), *cert. denied*, 127 S.Ct. 40 (2006); *Miculi v. Ashcroft*, 96 F. App'x 338, 340 (6th Cir. 2004) ("Equitable tolling has been found to apply to motions to reopen based on ineffective assistance of counsel."); *Hermiz v. INS*, 86 F. App'x. 44, 45 (6th Cir. 2003) ("[S]ome courts have held that the ineffective assistance of counsel may provide grounds for equitable tolling if the petitioner has been diligent in pursuing his rights."); *see also Scorteanu v. INS*, 339 F.3d 407, 413 (6th Cir. 2003) ( "[T]his court need not decide, in the instant case, whether the statute is subject to equitable tolling because, even if this court were to so concede, [the petitioner] has failed to prove entitlement to equitable relief."). On the other hand, "this Court has never held that equitable tolling applies to numerical limitations on motions to reopen." *Sene v. Gonzales*, 180 F. App'x 551, 555 (6th Cir. 2006). *But see id.* at 561 n.3 (Clay, J., dissenting) ("The majority states that equitable waiver is not available in this jurisdiction because this Circuit

---

(iii) Agreed upon by all parties and jointly filed. Notwithstanding such agreement, the parties may contest the issues in a reopened proceeding; or

(iv) Filed by the Service in exclusion or deportation proceedings when the basis of the motion is fraud in the original proceeding or a crime that would support termination of asylum in accordance with § 1208.22(f) of this chapter.

[4] The IJ denied it on September 10, 2002, the BIA affirmed without opinion on November 28, 2003, and this Court denied review on July 28, 2005.

[5] As *Luntungan* observed, the term equitable tolling may not be entirely accurate because tolling, by definition, applies to time limits, not numerical limits. *Luntungan v. Attorney Gen.*, 449 F.3d 551, 553 n.1 (3d Cir. 2006) (per curiam).

[6] Relatedly, the Supreme Court has stated that the equitable tolling doctrine "is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). However, "deadlines that define the court's jurisdiction may not be equitably tolled." *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004).

has not expressly held that it exists; that simply makes equitable waiver under these circumstances an issue of first impression in this Circuit, not improper.").

This Court also need not resolve this question because Petitioner has not established due diligence in  pursuing a complaint against either her former or current counsel. *See Scorteanu*, 339 F.3d at 413 (holding that the court did not need to decide whether the time period prescribed in 8 U.S.C. § 1252b(c)(3)(A) (1994) is subject to equitable tolling because the petitioner did not exercise due diligence in filing his motion to reopen); *see also Jobe*, 238 F.3d at 100 (stating that "equitable tolling is unavailable where a party fails to exercise due diligence"). Due diligence requires an alien to prove that the delay in filing the motion to reopen was due to "an exceptional circumstance beyond his control." *Scorteanu*, 339 F.3d at 414; *see also Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir. 2003) (stating that the petitioner must exercise due diligence in discovering the error, deception, or fraud before equitable tolling will apply).

Petitioner argues in her brief that "[f]rom the time Petitioner discovered her former attorney's ineffective assistance," she has "exercised due diligence" and "has exhausted all available remedies." This argument is problematic for two reasons. First, the record reflects that although Petitioner filed a grievance against her previous attorney, Yaeger, with the Michigan Bar authorities in April 2001, soon after she discovered Yaeger's misconduct, she did not file a motion to reopen her case based on ineffective assistance of counsel at that time. Instead she filed an emergency motion for leave to file a late application for cancellation of removal, alleging that Yaeger had been ineffective for failing to submit a timely application. *Tapia-Martinez*, 142 F. App'x at 883. At the May 7, 2001 hearing, the IJ specifically noted Petitioner's new counsel, Petrella, had failed to file a properly documented allegation of ineffective assistance of counsel, and invited her to do so. *Id.* Petitioner did not, opting instead to file an appeal with the BIA. *Id.* at 884. Thus, Petitioner did not attempt to properly raise ineffective assistance before either the IJ or the BIA until she filed her motion to reopen, or in the alternative, to reconsider, with the IJ in September 2002–more than fifteen months after discovering Yaeger's deficient performance. Such a delay cannot be considered due diligence.

Petitioner's argument also overlooks the fact that Petitioner did not exercise due diligence in alleging ineffective assistance against her current counsel, Petrella, having waited over three years after the BIA denied her appeal as untimely before filing any allegation of ineffective assistance of counsel. As early as May 7, 2001, Petitioner was alerted to, if not on actual notice of, Petrella's first shortcoming when the IJ indicated on the record that Petrella failed to include any evidence in support of the leave to file a late application, and the IJ alerted Petrella as to the proper recourse. Further, she heard the IJ's advice regarding a motion to reopen. By August 2002, she must have been aware that the BIA dismissed her appeal as untimely and that Petrella had not followed the IJ's advice. The IJ's September 10, 2002 ruling reflects the several bases for denying the motion to reopen, deriving from Petrella's deficient performance. Thus, as early as September 10, 2002, Petitioner should have been aware that the BIA had dismissed her initial appeal as untimely, and she had actual notice from the IJ's opinion that Petrella's representation was suspect in other aspects as well. Petitioner does not allege that she was unaware of these developments or that Petrella hid this information from her. Yet she did not file a motion to reopen alleging ineffective assistance against Petrella until 2005.[7]

---

[7] Petitioner filed a complaint against Petrella with the Michigan Attorney Grievance Commission on or about June 13, 2005.

Respondent points out that Petitioner did not present every possible complaint against Petrella. Neither the motion to reopen (written by Petrella) nor Petitioner's affidavit accompanying her bar complaint mentioned the fact that Petrella ignored the IJ's virtual invitation to file a properly documented motion to reopen alleging ineffective assistance. Petitioner's affidavit also failed to highlight the fact that her initial appeal to the BIA was untimely because Petrella sent it via second-day delivery, such that it could not possibly have been timely. Petitioner's affidavit further fails to mention

In short, Petitioner failed to exercise due diligence because she did not file a motion alleging ineffective assistance by Yaeger until fifteen months after she discovered Yaeger's deficient performance, and she did not file a similar motion based on Petrella's short comings until nearly three years after she discovered the ineffective assistance. *See, e.g., Scorteanu*, 339 F.3d at 410 (holding that the petitioner was not entitled to reopen *in absentia* order of removal based on equitable tolling, despite original counsel's failure to inform him of the hearing dates, where the petitioner failed to exercise due diligence by waiting almost a year after receiving actual notice of the removal order and retaining different counsel, exceeding the statutory 180-day limit for filing a motion to reopen based upon exceptional circumstances). *Cf. Iturribarria*, 321 F.3d at 899 (holding that the petitioner's allegations of fraud by prior counsel arguably tolled 90-day deadline to reopen deportation proceedings where the petitioner exercised due diligence by retaining a new attorney and filing motion to reopen less than one month from when he learned of misdeed).

Finally, we note that Petitioner was and is statutorily ineligible for cancellation of removal, adjustment of status, and voluntary departure pursuant to 8 U.S.C. § 1229c(d). Section 1229c(d) states that: "if an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien–. . . (B) shall be ineligible, for a period of 10 years, to receive any further relief under this section and sections 1229b, 1255, and 1259 of this title." This Court recently remarked that "[i]t is important to note here that an alien's failure to depart within a specified voluntary departure period has harsh legal consequences: it automatically subjects that alien to a ten-year ban on seeking reentry into the United States, as well as a civil penalty in the amount of $1,000 to $5,000," and that "[t]he ten year ban also extends to applications for cancellation of removal." *Martinez-Espino v. Gonzales*, Nos. 05-4076, 05-4453, WL 3690308, at *2 (6th Cir. Dec. 14, 2006) (citing 8 U.S.C. § 1229c(d)). The prior panel in this case made the same observation, and further noted that "[b]ecause she did not abide by the terms of the voluntary departure, she became ineligible for cancellation of removal, and thus even if the IJ had been inclined to allow the petitioner to file an application for cancellation of removal, the application would have been denied." *Tapia-Martinez*, 142 F. App'x at 885.

## B. Review by a Three-Member Panel

Section 1003.1(e) of the Code of Federal Regulations states that "[u]nless a case meets the standards for assignment to a three-member panel under paragraph (e)(6) of this section, all cases shall be assigned to a single Board member for disposition." 8 C.F.R. § 1003.1(e) (2006). However, a case may be assigned for three-person review if, in a particular case, there is a "need to review a clearly erroneous factual determination by an immigration judge." 8 C.F.R. § 1003.1(e)(6)(v).[8] Even then, the regulation does not guarantee a three-member BIA panel as a matter of right. *See* 8 C.F.R. § 1003.1(e)(6) ("Panel decisions. Cases *may only be assigned* for review by a three-member panel if the case presents one of these circumstances. . . ." (emphasis added)); *see also Martinez-Espino,* 2006 WL 3690308, at *4 (noting that this Court's precedent "strongly supports" the view that Fifth Amendment due process does not include a constitutional right to a three-member BIA panel).

In her brief, Petitioner states that "the facts merit a finding that Petitioner should be allowed to file a Petition for Cancellation of Removal" and that "[o]nly the mishandling of her file by her attorneys, this one included, has led her to not being able to have her case considered." She also

---

that her untimely appeal caused Petitioner to fail to comply with the earlier order of voluntary departure, rendering her ineligible for cancellation of removal, which also formed a basis for the IJ's denial of the motion to reopen.

    In short, as Respondent states, Petitioner's failure to raise these complaints against Petrella further undermines her assertion of due diligence in pursuing an ineffective assistance claim against current counsel.

[8] Section 1003.1(e) contains six exceptions. Petitioner does not claim that any other exceptions apply.

asserts that "[h]er husband, who arguably had the same case, was in fact [granted] the relief of legal permanent residence in December 2001." These are not allegations of factual error by the IJ, but arguments for equitable relief. Thus, the Board properly exercised its single-member review provision.

### III. Conclusion

For the foregoing reasons, the judgment of the BIA is **AFFIRMED.**